# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

BRANDON GREEN,

     Plaintiff

v.

LT. AGUALIA, et. al.,

     Defendants

Case No.: 3:16-cv-00619-MMD-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 39

     This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

     Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 39, 39-1 to 39-13; 42-1 to 42-4 (supplemental exhibits).) Plaintiff filed a response. (ECF No. 43.) Defendants filed a reply. (ECF No. 45.)

     After a thorough review, it is recommended that Defendants' motion be granted.

## I. BACKGROUND

     Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 5.) The events giving rise to this action took place while Plaintiff was housed at Warm Springs Correctional Center (WSCC). (*Id.*)[1] Defendants are Randy Fisher, David Frobes, Michael Peabody, and Ruben

---

[1] The Screening Order states that Plaintiff sues for events that occurred at Lovelock Correctional Center (LCC) (ECF No. 4 at 3); however, the complaint alleges violations of Plaintiff's rights while he was housed at Warm Springs Correctional Center (WSCC), but at the time he filed his complaint he was housed at LCC. (*See* ECF No. 5 at 1.)

Vidaurri. Defendant Agualia was dismissed without prejudice because Plaintiff did not timely serve her with the summons and complaint. (ECF No. 31.)

On screening, Plaintiff was allowed to proceed as follows: (1) against Fisher and Frobes: a Fourth Amendment claim for an unreasonable strip search; a retaliation claim; a due process claim for denial of access to the grievance process; and claims that his rights were violated under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc, et. al., and the First Amendment Free Exercise Clause; (2) a retaliation claim against Vidaurri, Agualia[2] and Sergeant Doe[3]; (3) against Peabody: a retaliation claim and due process claims. (ECF No. 4.)

**A. Fisher & Frobes: Fourth Amendment Strip Search; Retaliation; Due Process Denial of Access to the Grievance Process; RLUIPA; First Amendment Free Exercise**

Plaintiff alleges that he is a Muslim whose Islamic faith dictates a high level of modesty. On March 7, 2016, he claims that Fisher forced Plaintiff to strip and expose his genitals and anal cavity to multiple inmates and officers, some of whom were very close to Plaintiff, and at least one of whom was not male. Plaintiff asserts that he begged Fisher not to conduct the search in front of others, and voiced his religious objection, but Fisher disregarded him, and ordered the search to proceed. Plaintiff contends that Frobes ordered the strip search conducted by Fisher. Plaintiff avers that the pretext for the search was to find a pair of missing eye-glasses. Plaintiff states that it was unreasonable to expect that a pair of glasses would be found in Plaintiff's anus.

---

[2] Again, Agualia has been dismissed from the case without prejudice.

[3] To date, Plaintiff has not sought leave to amend to identify Sergeant Doe; therefore, Sergeant Doe should be dismissed without prejudice.

The strip search occurred after Plaintiff had filed two grievances against two well-known officers for making sexual comments. He contends that he had to "evacuate" the grievances to prevent further retaliation.

Plaintiff alleges the search was pretextual and retaliatory since Plaintiff had filed grievances against staff, Plaintiff begged to have a more private search and Fisher refused, and it was unreasonable because the reason given for the search was to look for a pair of missing glasses.

**B. Vidaurri: Retaliation**

Plaintiff alleges that he was involved in grieving multiple issues against multiple prison officials. Sergeant Doe filed a notice of charges against Plaintiff, which did not include any details. Instead, it only stated that on June 19, 2016, Plaintiff assaulted another inmate. Plaintiff alleges that Vidaurri investigated the alleged assault, and found ample evidence to prove Plaintiff could not have participated in the assault, but ignored this evidence and refused to follow up on substantial leads pointing to the true perpetrators. Plaintiff alleges that Vidaurri chose to manufacture a report which framed Plaintiff as the perpetrator in the alleged assault. When Plaintiff confronted Vidaurri about the report, Vidaurri told Plaintiff the charges were written by Sergeant Doe, and that the charges were related to all of the grievances Plaintiff had filed. (*Id.*)

**C. Peabody: Retaliation and Due Process Claims**

Plaintiff alleges that Sergeant Peabody found Plaintiff guilty of the assault and related charges without any evidence. Plaintiff requested to review camera footage, but was denied, and claims that the victim never even accused Plaintiff. Plaintiff asserts that no camera footage or informant placed Plaintiff in the area of the assault. On the other hand, Plaintiff alleges that he had a witness—Correctional Officer Robertson—who placed Plaintiff in a different location at the time of the assault, but Plaintiff was not allowed to call his witness.

Plaintiff contends that he was found guilty without any evidence in retaliation for filing grievances against staff. In addition, he alleges that his due process rights were violated because his conviction was based on fabricated charges; was not based on sufficient evidence; and he was not allowed to call his witnesses.

Finally, Plaintiff claims that he was improperly denied a parole hearing on August 29, 2016, and lost of good time credits, because on the false charges filed against him. He avers that he may have received a release date of September 6, 2016 at that hearing.

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-50. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing

competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmoving party is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249-50 (citations omitted).

Defendants move for summary judgment, arguing: (1) Fisher was not personally involved in the alleged strip search; (2)

### III. DISCUSSION

Preliminarily, the court notes that Plaintiff's response to Defendants' motion contains no declaration from Plaintiff or any other evidence in support of his terse arguments. Instead, Plaintiff merely asks the court for summary judgment to be awarded to him because Defendants violated his rights and their motion is without grounds. (ECF No. 43.) In addition to being unsupported by any evidence, the opposition is devoid of any *facts* to support the brief and conclusory arguments asserted.

**A. Fisher**

First, Defendants argue that Fisher was not personally involved in the alleged search, retaliation, denial of the grievance process, or infringement of Plaintiff's religious rights. Fisher submits evidence that he did not work at WSCC on March 7, 2016, but worked at LCC. (ECF No. 39-2 at 2; Fisher Decl., ECF No. 42-1 ¶ 5.)

Plaintiff provides no argument or evidence to dispute that Fisher was not personally involved in the alleged search, retaliation, denial of the grievance process, or infringement of Plaintiff's religious rights under RLUIPA and the First Amendment. Therefore, summary judgment should be granted as to all claims asserted against Fisher.

**B. Frobes**

**1. The Strip Search**

**a. Standard**

Prisoners retain basic constitutional rights. *Turner v. Safley*, 482 U.S. 78, 84 (1987) ("Prison walls do not form a barrier separating prison inmates from the protections of the Constitution."). The right at issue is the Fourth Amendment right to be free from "unreasonable searches and seizures." U.S. Const., amend IV. "[S]imply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations." *Bell v. Wolfish,* 441 U.S. 520, 545 (1979). The reasonableness of a particular search is examined in reference to the prison context. *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988).

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Id*. (citing *Bell*, 441 U.S. at 559).

Prisoners retain a limited Fourth Amendment right to shield themselves from being observed nude. *See Michenfelder*, 860 F.2d at 333-34. The Supreme Court held in *Bell v. Wolfish,* 441 U.S. 520, 528 (1979) that routine visual body cavity searches performed to prevent the possession of weapons and contraband do not violate a prisoner's Fourth Amendment rights. The Ninth Circuit subsequently held that in general, strip searches do not violate the Fourth

1    Amendment rights of prisoners, unless they are "excessive, vindictive, harassing, or unrelated to

2    any legitimate penological purpose." *Michenfelder,* 860 F.2d at 332-33. Specifically, *Michenfelder*

3    upheld a strip search policy that called for visual body cavity searches whenever an inmate left or

4    returned to a unit, or whenever an inmate traveled under escort within the unit, including for sick

5    call, recreation, disciplinary hearings and visits. *Id*. at 332. The strip searches in *Michenfelder* were

6    conducted in the hallway, and not through closed cell doors, but the policy was still upheld because

7    it would have been unreasonable to conduct the searches otherwise under the circumstance. The

8    policy was upheld even though the searches were conducted within the view of female correctional

9    officers. *Id*. at 333-34 (noting that "assigned positions of female guards that require only infrequent

10   and casual observation, or observation at a distance, and that are reasonably related to prison needs

11   are not so degrading as to warrant court interference").

12        The Ninth Circuit did conclude in *Jordan v. Gardner*, 986 F.2d 1521 (9th Cir. 1993) that

13   male searches of clothed female inmates involving random, non-emergency, suspicionless,

14   physically- intrusive tactile searches of were unreasonable. The court noted that the legitimate

15   expectation of bodily privacy from persons of the opposite sex is extremely limited. *Id*. at 1524.

16            **b. Analysis**

17        Defendants argue that the strip search was reasonable. Frobes ordered correctional officers

18   to perform unclothed body searches of all the inmates on the tier from which a staff member's

19   eyeglasses had disappeared.  (Frobes Decl., ECF No. 42-2 ¶ 6.) The inmates remained in their

20   cells, and no inmate was searched outside of his cell or was taken outside his cell without clothing.

21   (*Id.* ¶ 7.) The officers ordered the inmates (while in their cells) to remove their clothes and pass

22   them through the food slot in the cell door. (*Id.*) After an officer searched the clothes, the officer

23   instructed the inmate to show the officers that nothing was in his mouth. (*Id.*) The officers also

8

instructed the inmate to squat, spread his cheeks, and cough to show the officers there was no contraband in the anus. (*Id.*)

If an inmate had a cellmate, the cellmate was instructed to turn and face the wall to prevent him from viewing the inmate being searched. (*Id.*) Frobes instructs his officers to perform all unclothed body searches as discreetly as possible, and monitors the searches to ensure they are conducted properly. (*Id.* ¶ 8.) To the best of Frobes knowledge, the officers searched Plaintiff as discreetly as possible. (*Id.*)

Finally, based on the manner in which the tier is laid out and the manner in which the officers stood in front of each cell window to perform the search, Frobes does not believe other inmates or staff members could have seen Plaintiff during the search. (*Id.* ¶ 9.) As such, Frobes does not believe Plaintiff's naked body and open anus were exposed during the search to anyone other than the officers conducting the search. (*Id.*)

Administrative Regulation (AR) 422 provides that strip searches may be conducted when there is reasonable suspicion the person may be carrying contraband. WSCC Operational Procedure (OP) 422 states that unclothed body searches are to be conducted in an area out of view of other persons. (ECF No. 39-5 at 2.)

Next, Defendants contend it was not unreasonable to conduct such a search for a pair of missing eyeglasses because officers have found prisoners will hide a variety of objects on or in their bodies. They provide a declaration from Deputy Director Harold Wickham that based on his personal knowledge prisoners have attempted to hide a variety of objects in their rectums, including: a prison made 8-inch knife; drugs in packages; cellular phones; cellular phone chargers; a flip flop; eating utensils; and numerous improved sexual devices. (Wickham Decl., ECF No. 39-6 ¶ 5.)

Based on this evidence, the court finds that the search undertaken to locate the contraband was reasonable under the Fourth Amendment. There is nothing to suggest the search was "excessive, vindictive, harassing, or unrelated to any legitimate penological purpose." Instead, the search was undertaken for the legitimate penological purpose of locating contraband that went missing from Plaintiff's housing tier.

According to the evidence, Plaintiff and the other inmates on the tier were required to undergo a strip search while in their cells: they had to take off their clothing and pass it through the food slot so it could be searched; then, the inmate had to open his mouth and then squat, spread his buttocks and cough to show the officer there was no contraband in the anal cavity. If a cellmate was present, the cellmate was instructed to face the wall so as to not view the inmate being searched. According to Frobes, the search was conducted as discreetly as possible.

The justification was legitimate: to find a pair of eyeglasses that were missing and were considered contraband. While Plaintiff alleges that this was an unreasonable justification to perform a strip search, the Supreme Court has acknowledged that even everyday items considered contraband "can undermine security if introduced" into a prison. *Florence v. Board of Chosen Freeholders of County of Burlington*, 566 U.S. 318, 332 (2012) (citing to items such as lighters and matches, cell phones, pills and medications, chewing gum, hair pins, wigs, and pens that can be used for violence, means of escape or evasion, for concealing other items, and as currency). The Supreme Court likewise acknowledged that contraband may be concealed on the body or inside the mouth or some other body cavity. *Id*. The Court cited examples of people concealing items under their genitals and in the rectal cavity. *Id*. at 335. In *Florence*, the Supreme Court found it was reasonable to have detainees on intake undergo a search that requires them to lift their genitals or cough in a squatting position in order to uncover contraband that can go undetected by

1  other less invasive searches. Defendants provide a declaration of Deputy Director Wickham that

2  confirms this has been the case in Nevada's prison facilities in his experience.

3        The search was conducted within Plaintiff's cell, and the evidence demonstrates that

4  Plaintiff would not have been in view of other inmates or staff members not conducting the search.

5        Plaintiff presents no specific argument or any evidence to rebut Defendants' evidence.

6  Therefore, summary judgment should be granted in Frobes' favor with respect to the Fourth

7  Amendment strip search claim.

8        **2. Retaliation**

9        Plaintiff alleges that Frobes ordered Fisher to perform an unclothed body search in

10 retaliation for Plaintiff filing grievances against other prison officers for making sexual comments.

11       Section 1983 provides a cause of action for prison inmates whose constitutionally protected

12 activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, 791 F.3d 1023,

13 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim consists

14 of five elements:

15            (1) An assertion that a state actor took some adverse action against
             an inmate (2) because of (3) that prisoner's protected conduct, and
16            that such action (4) chilled the inmate's exercise of his First
             Amendment rights, and (5) the action did not reasonably advance a
17            legitimate correctional goal.

18 *Jones*, 791 F.3d at 1035 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005))

19 "The First Amendment guarantees a prisoner a right to seek redress of grievances from prison

20 authorities as well as a right of meaningful access to the courts." *Id.* (citing *Bradley v. Hall*, 64

21 F.3d 1276, 1279 (9th Cir. 1995)).

22       Defendants assert that Plaintiff is presumably referring to grievance 20063018205, where

23 he alleged that Officer Kwasna told him he looked like an "f-ing drag queen" because he was

wearing a ripped thermal shirt. He also alleged that Officer Cullom told him to donate the thermal as a basketball floor rag. (ECF No. 39-7 at 8.)

Defendants state hat the officers conducting the strip search searched all inmates in the unit in order to find the missing pair of eyeglasses. Plaintiff was not targeted for the search; instead, it was a search for contraband. In addition, they contend that there are no facts that show the search was related to his grievances, or that Frobes or those conducting the search were aware of the grievances. Instead they became aware of the grievances only through this litigation.

Frobes submits a declaration stating that he did not order officers to perform an unclothed body search of Plaintiff in retaliation for filing grievances, and he did not have any knowledge Plaintiff had submitted grievances alleging sexual harassment against other staff members. (Frobes Decl., ECF No. 42-2 ¶ 5.) The sole purpose of the search was to locate missing eyeglasses, and he ordered the officers to search all inmates on that tier. (*Id*. ¶ 6.)

Plaintiff submits no specific argument or evidence to rebut the evidence presented by Defendants. Given there is no genuine issue of material fact presented, the record demonstrates that Plaintiff was strip searched to find contraband, along with the other inmates on his tier, and there was no relationship between the search and his filing of grievances against other staff members. Therefore, summary judgment should be granted in Frobes' favor as to the retaliation claim.

**3. Due Process Denial of Access to the Grievance Process**

Plaintiff alleges Fisher and Frobes used a pretextual reason to search Plaintiff after he filed grievances against other officers for sexual harassment, and to prevent further retaliation he "was forced to evacuate the grievances."

Defendants submit Plaintiff's inmate grievance history report and case notes which demonstrate Plaintiff did not abandon his grievances. Instead, after he submitted his grievance, it was referred to the Inspector General's Office for investigation because it alleged sexual harassment. (ECF No. 39-7; 39-12.)

Plaintiff presents no argument or evidence that substantiates his allegation that he was denied access to the grievance process. Therefore, summary judgment should be granted as to Frobes with respect to this due process claim.

### 4. RLUIPA & First Amendment Free Exercise Clause

Section 3 of RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution… even if the burden results from a rule of general applicability, unless the government demonstrates that the burden on that person--(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a).

"Courts are expected to apply RLUIPA's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Hartmann v. Cal. Dep't of Corr.*, 707 F.3d 1114, 1124 (9th Cir. 2013) (internal quotation marks and citation omitted).

"Under RLUIPA, the challenging party bears the initial burden of proving that his religious exercise is grounded in a sincerely held religious belief …, and that the government's action substantially burdens his religious exercise." *Holt v. Hobbs*, 135 S.Ct. 853, 857 (2015) (citations omitted). A "substantial burden" on "religious exercise" must impose a significantly great restriction or onus upon such exercise." *Greene v. Solano County Jail*, 513 F.3d 982, 987 (9th Cir.

2008) (quoting *San Jose Christian Coll v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). If the plaintiff makes a showing of a substantial burden on the exercise of his religion, the court's analysis turns to whether the defendant has established the burden furthers "a compelling governmental interest," and does so "by the least restrictive means." 42 U.S.C. § 2000cc-1(a), (b); *Holt*, 135 S.Ct. at 857 (citation omitted).

"The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment … prohibits government from making a law prohibiting the free exercise [of religion]." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citations and quotation marks omitted, alteration original). "The right to exercise religious practices and beliefs does not terminate at the prison door. The Free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam). "A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams*, 791 F.3d 1023, 1032 (9th Cir. 2015) (citing *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987), *aff'd sub. nom. Hernandez v. C.I.R.*, 490 U.S. 680 699 (1989)).

Defendants argue that they strip searched the inmates on Plaintiff's tier in a reasonable attempt to discover contraband, which furthered a compelling government interest to maintain order and security. The manner the search was conducted was the least intrusive manner as the searches were done as discreetly and privately as possible. Plaintiff's religion and ability to maintain personal modesty were reasonably limited for a brief period to accomplish a valid penological objective.

1    Plaintiff provides no evidence in his response to raise a genuine dispute of material fact as

2    to whether his ability to exercise his religion was substantially burdened when he was subjected to

3    a brief strip search, effectuated in a discrete manner for the purpose of locating contraband which

4    had gone missing from Plaintiff's housing tier. Having no evidence that there was a substantial

5    burden on Plaintiff's religious exercise, summary judgment should be granted in Forbes' favor as

6    to the RLUIPA and First Amendment free exercise claims.

7    The RLUIPA claim also appears to be moot because Plaintiff was paroled and released

8    from custody. *See Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) (citation omitted)

9    (plaintiff may not seek damages against defendants under RLUIPA in their official or individual

10   capacities, and when a plaintiff is "removed from the environment in which he was subjected to

11   the alleged RLUIPA violations" "'he no longer has a legally cognizable interest in a judicial

12   decision on the merits of the claim'").

13   **C. Vidaurri: Retaliation Claim**

14   Plaintiff alleges that Vidaurri manufactured a report which framed Plaintiff as the

15   perpetrator of an alleged assault because Plaintiff had filed grievances against multiple prison

16   officials.

17   In his declaration, Vidaurri states that he believes Plaintiff's allegations against him are

18   linked to a report that Plaintiff was spreading rumors about an inappropriate relationship between

19   another inmate and a staff member. (Vidaurri Decl., ECF No. 42-3 ¶ 5.) He states that on June 13,

20   2016, a shift commander informed another investigator and Vidaurri that Plaintiff had told Greta

21   Phillips (a culinary free staff employee) that inmate Menefee claimed to be having an inappropriate

22   relationship with her. Vidaurri and the other officer decided to speak directly to Menefee, and

23   interviewed him. (*Id.*)  Menefee said he was aware of the rumors, and said Plaintiff was upset

because Menefee was chosen for a culinary position instead of Plaintiff, and that Plaintiff told him he was going to spread rumors about Menefee and Ms. Phillips. (*Id*. ¶ 6.) Menefee said he had never had inappropriate contact with Ms. Phillips. (*Id*.) On June 16, 2016, Plaintiff approached Vidaurri and said he wanted to speak to him on this issue, and Vidaurri told him they would need to speak later but Plaintiff became upset. (*Id*. ¶ 7.)

On June 19, 2016, Menefee reported he had been assaulted and requested protective segregation. He said he was attacked by a black inmate in Unit 4. Plaintiff was housed in Unit 4 at the time. (*Id*. ¶ 8.)

In investigating this matter, other inmates and staff members reported that Plaintiff went to Unit 1, where Menefee was housed, and assaulted him. They also reported that Plaintiff attacked Menefee because he was upset he lost his culinary job; that Menefee had spoken with Vidaurri about the rumors he was allegedly spreading; and Menefee had received the culinary job Plaintiff wanted. (*Id*. ¶ 9.) Plaintiff was not allowed to have the statements from other inmates because they are kept confidential to prevent retaliation. (*Id*. ¶ 10.)

Vidaurri maintains he did not falsify the charges against Plaintiff to retaliate for submitting sexual assault grievances against other inmates. He was unaware of such grievances. (*Id*. ¶ 11.) He also states that he did not ignore evidence that proved Plaintiff did not participate in the assault, or refuse to investigate any leads pointing to the real perpetrator or frame Plaintiff as the perpetrator. (*Id*. ¶ 12.)

The elements of a retaliation claim are set forth above. Vidaurri has presented evidence that he did not know about the grievances against other staff members and did not falsify charges against Plaintiff; therefore, he did not file charges against Plaintiff *because* of his First Amendment activity of filing grievances. Plaintiff provides no evidence in his response to create a genuine

1  dispute of material fact as to this element of his claim. Therefore, summary judgment should be

2  entered in Vidaurri's favor as to the retaliation claim.

3  **D. Peabody**

4      **1. Retaliation**

5      Plaintiff alleges Peabody found him guilty of assault and related charges in retaliation for

6  filing grievances against other officers.

7      Peabody states that Plaintiff requested two inmates and Correctional Officer Robinson as

8  witnesses. Peabody interviewed those three individuals and took their statements prior to the

9  hearing. There was evidence to find Plaintiff guilty of the charge. (Peabody Decl., ECF No. 42-4

10  ¶¶ 5-6.) He did not find Plaintiff guilty of the charge to punish him for submitting grievances, as

11  he was unaware Plaintiff had submitted grievances alleging sexual harassment against other

12  WSCC staff at the time of the hearing. He only learned of those grievances through this litigation.

13  (*Id.* ¶ 8.)

14      Peabody has put forth a declaration demonstrating that he had evidence to find Plaintiff

15  guilty of the charges, and that he did not know about Plaintiff's prior grievances against other staff

16  members. Therefore, he did not find Plaintiff guilty of those charges because Plaintiff had filed

17  prior grievances against staff members.

18      Plaintiff has submitted no evidence to create a genuine issue of material fact as to whether

19  Peabody retaliated against Plaintiff in finding him guilty of the charges. Therefore, summary

20  judgment should be granted as to Peabody with respect to the retaliation claim.

21  ///

22  ///

23  ///

### 2. Due Process Re: Disciplinary Hearing

Plaintiff alleges that Peabody found him guilty of the charges without any evidence and based on fabricated charges; and that he was not allowed to call an officer as a witness, who would have placed Plaintiff in a different location at the time of the assault.

Peabody argues that he reasonably relied on Vidaurri's investigation report and spoke with all the individuals Plaintiff sought to call as witnesses in advance of the hearing.

Prior to the disciplinary hearing, Peabody received an investigative report prepared by Officer Vidaurri. Peabody also spoke with the inmates and correctional officer whom Plaintiff requested as witnesses, and took statements from all three of his proposed witnesses. (Peabody Decl., ECF No. 42-4 ¶ 5.) After reading Vidaurri's report and speaking with the witnesses, Peabody determined there was evidence of his guilt and found him guilty. (*Id*. ¶ 6.) Plaintiff could not see the investigative report for safety and security reasons because it contained confidential information regarding other inmates. (*Id*. ¶ 7.)

The disciplinary hearing summary states that Plaintiff requested two inmates as witnesses (Meeks and Lee), which would be allowed, and also requested an officer as a witness, and Peabody spoke with that officer on the phone prior to the hearing and entered his statement. (ECF No. 39-13 at 3.) Plaintiff also made a statement that the yard was locked down that day and he did not leave his unit all day, and that the officer saw and spoke to him in the unit that day. (*Id*.) Peabody relied on the notice of charges, officers' reports, officers' statements and witness statements. (*Id*. at 4.)

Under the Fourteenth Amendment, "[n]o State shall … deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant

in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (citation omitted). When inmates face disciplinary charges, due process requires that the inmate receive: (1) written notice of charges; (2) at least 24 hours between the time the prisoners receives the written notice and the time of the hearing, so the prisoner may prepare his defense; (3) a written statement by the hearing officer of the evidence relied upon and the reason for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance if the prisoner is illiterate or the issues presented are legally complex. *Id*. at 556.

Here, Plaintiff states that he was not able to call the officer as a witness.

The right to call witnesses in a prison disciplinary hearing is a qualified right. Prison officials must make individualized determinations to limit the calling of witnesses, and must eventually explain their reasons for so limiting the prisoner's ability to defend himself. *See Ponte v. Real*, 471 U.S. 491, 497 (1985); *Serrano v. Francis*, 345 F.3d 1071, 1077-78 (9th Cir. 2003). "[O]fficials need not provide inmates an unfettered right to call witnesses, but they must make the decision whether to allow witnesses on a case-by-case basis, examining the potential hazards that may result from calling a particular person." *Serrano*, 345 F.3d at 1079 (citation omitted).

Prison officials have discretion to refuse to call a witness for reasons including irrelevance or lack of necessity. *Wolff*, 418 U.S. at 566. The right to call witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases … [or] by the very real dangers in prison life which may result from violence or intimidation directed at either inmates or staff." *Ponte*, 471 U.S. at 495.

Here, Peabody states that he interviewed the officer prior to the hearing; therefore, it was unnecessary to call him as a witness at the hearing. Prisoners have no right to cross-examine witnesses in a prison disciplinary hearing. *See Wolff*, 418 U.S. at 567-68.

The court finds that Peabody properly refused to call the officer as a witness because he had already interviewed him and Plaintiff had no right to cross-examine him. Plaintiff does not rebut this.

Plaintiff also contends that the disciplinary finding was not supported by the evidence.

"[T]he requirements of due process are satisfied if some evidence supports the decision" by the disciplinary hearing officer. *Superintendent Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

In determining whether this standard is satisfied, the court must inquire whether "there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Id.* at 455-56 (citations omitted) (emphasis added). "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearings." *Id.* at 457. Even if the evidence is "considered as meager" and there was "no direct evidence" identifying the inmate as the assailant, that does not mean the record "is so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* The court may not "make its own assessment of the credibility of witnesses or reweigh the evidence." *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) (citing *Hill*, 472 U.S. at 455).

Here, Peabody provides evidence that he relied on the investigative report of Vidaurri, and the statements of other inmates and officers in coming to his conclusion. While Plaintiff challenges

20

the veracity of Vidaurri's report in his complaint, he has come forward with no evidence to create a genuine dispute of material fact regarding that evidence, or whether Peabody was entitled to rely on it in making his disciplinary determination. Therefore, the disciplinary findings were supported by some evidence.

Insofar as Plaintiff contends that the charges against him were false, as long as a prisoner receives proper procedural due process, a claim based on the falsity of disciplinary charges, standing alone, does not state a constitutional claim. *See Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 951-52 (2d. Cir. 1986); *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984). Plaintiff received proper due process; therefore, he does not have a due process claim based on the allegation that the charges were false.

In conclusion, summary judgment should be granted in Peabody's favor as to the due process claim asserting that Plaintiff was not given due process in connection with his disciplinary hearing.

### 3. Due Process: Parole Hearing and Loss of Good Time Credits

Plaintiff alleges he was improperly denied a parole hearing and denied good time credits as a result of false charges being brought against him.

Peabody presents evidence that Plaintiff subsequently appealed his disciplinary findings. Deputy Director Harold Wickham, who was then the warden, prepared a memorandum regarding Plaintiff's disciplinary appeal. He noted that Plaintiff claimed he had an alibi—that he was sleeping in his cell when the assault occurred, and that this was supported by Correctional Officer Roberson and inmates Meeks and Lee. Wickham concluded that Peabody conducted the hearing in accordance with Administrative Regulation 707, and that Peabody's decision was based on the evidence presented to him. Wickham found, however, that the evidence did "present a

preponderance of doubt" and he decided to give Plaintiff the benefit of the doubt, and the charges were dismissed. (ECF No. 39-10; ECF No. 39-7 at 2.) According to Peabody, the good time credits were restored.

The court agrees that Peabody cannot be liable for the lost parole hearing and loss of good time credits where: Wickham determined there was some evidence to support Peabody's findings; Plaintiff has not provided any direct evidence of fabrication of the charges (or that Peabody was involved in fabrication of the charges); and when Wickham dismissed the charges, Plaintiff's good time credits were restored. Therefore, summary judgment should be granted in favor of Peabody as to this due process claim as well.

**H. Qualified Immunity**

Given the court's recommendation that summary judgment be granted in Defendants' favor as to all of the claims, the court need not reach Defendants' qualified immunity argument.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DISMISSING** Sergeant Doe without prejudice for failure to timely identify the defendant, and **GRANTING** Defendants' motion for summary judgment (ECF No. 39).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED:  June 3, 2019.

William G. Cobb
United States Magistrate Judge